UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GERRARD JONES,

    Plaintiff,

v.

J. TEIXEIRA,

    Defendant.

Case No. 6:23-cv-1738-PGB-DCI

**CONSENTED[1] FIRST AMENDED COMPLAINT FOR DAMAGES**

Plaintiff Gerrard Jones brings this First Amended Complaint for Damages against Defendant Johnathan Teixeira, a Sergeant with the Florida Department of Corrections while Plaintiff was imprisoned at Tomoka Correctional Institution ("Tomoka CI") in 2021, in his individual capacity. In support, Plaintiff alleges:

**Jurisdiction and Venue**

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the First and Eighth Amendments to the U.S. Constitution.

---

[1] This amendment is being filed with the written consent of Defendant pursuant to Rule 15(a)(2).

1

3. Venue is proper in this District under 28 U.S.C. § 1391(b), being the district in which all of the events giving rise to the claims occurred.

4. All conditions precedent to this lawsuit have occurred, been performed, or been waived.

## Parties

5. At all times relevant, Gerrard Jones ("Plaintiff") was a Black inmate at Tomoka CI, in Volusia County, Florida.

6. Plaintiff was not incarcerated when he filed the Complaint (Doc. 1) on September 11, 2023, initiating this lawsuit.

7. At all times relevant, Johnathan Teixeira ("Defendant") was a White Corrections Sergeant at Tomoka CI and is sued individually.

8. At all relevant times during the events at issue in this case, Defendant acted under color of law.

9. Plaintiff has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## Factual Allegations

10. In August 2015 Plaintiff was imprisoned at Santa Rosa Correctional Institution ("Santa Rosa CI"), where he was brutally attacked by multiple prison guards, including Sergeant Mark Goldhagen.

11. Plaintiff sued Goldhagen and the other guards in case *Jones v. Schwarz*, 3:18-cv-155, in the District Court of the Northern District of Florida.

12. Goldhagen and Defendant were friends, and members of the Ku Klux Klan ("KKK").

13. On August 8, 2021, while housed in confinement at Tomoka CI, Plaintiff gave an inmate orderly named "Flav" some legal documents for his Santa Rosa CI lawsuit, including a spoliation motion and witness statements, so the orderly could take the documents to the law library, copy them, and return them to the Plaintiff.

14. However, Defendant had instructed the orderly to bring to the Defendant all legal documents which Plaintiff planned to file in his lawsuit.

15. As instructed, the orderly brought the legal documents to the Defendant, who then tore them up.

16. When the orderly informed Plaintiff what occurred, Plaintiff yelled down the hall to the Defendant and complained about his actions.

17. Defendant came to Plaintiff's cell and told Plaintiff that every time Plaintiff sends something out, he would tear it up if it were against his "brother" Goldhagen.

18. Defendant also bragged about being in the KKK.

19. Plaintiff repeatedly asked for his documents, and wrote grievances that day.

20. Also on August 8, 2021 Defendant came to Plaintiff's cell and threatened to mace, beat, and kill Plaintiff if he kept going on about him destroying Plaintiff's legal papers.

21. Defendant made additional threats to kill Plaintiff and falsely yelled to the fifty or so other inmates in Plaintiff's wing that "Lawyer boy" (Plaintiff's prison nickname) was a child molester in prison for raping very young children.

22. Inmates in prison for child molestation are typically scorned by other inmates, and subject to severe abuse by inmates.

23. Falsely notifying the other inmates that Plaintiff was a child molester was an invitation by the Defendant to harm Plaintiff.

24. Defendant told Plaintiff that if he did not drop the lawsuit against Goldhagen he would get Plaintiff "hit"—i.e., stabbed or killed—by another inmate.

25. When Plaintiff continued to yell at Defendant to return his legal documents, Defendant threatened to "get the captain" and have Plaintiff "gassed" if Plaintiff "did not shut up."

26. Plaintiff filed a grievance in response to this threat.

27. The next morning, August 9, Plaintiff had his grievances placed in the submission box.

28. Defendant came to Plaintiff's cell with a large Black inmate, and no additional officers.

29. Defendant signaled for an officer at the security station to open Plaintiff's cell door, and the door was opened.

30. Defendant ordered Plaintiff to stand back.

31. The other inmate entered the cell with a homemade knife, followed by the Defendant.

32. Defendant told Plaintiff that he told him to stop filing on his "brother," that Plaintiff knew Defendant could have him killed right now—i.e., by the knife-wielding inmate—and that Plaintiff better drop his lawsuit.

33. Defendant then poked Plaintiff hard in the left eye with his right finger, causing Plaintiff excruciating pain, as well as anxiety and mental anguish.

34. Defendant had the inmate remove Plaintiff's mattress and pillow, because Defendant knew that Plaintiff had previously stored legal documents in his bedding.

35. Defendant violated prison regulations regarding disciplinary confinement, by his entering Plaintiff's confinement cell (i) without another officer

being physically present at the cell when the cell door was opened and (ii) without first cuffing Plaintiff.

36. Defendant also got five other White guards, handcuffed Plaintiff, removed him from his cell, marched him to a nearby area off camera, and threw Plaintiff into a brick wall, injuring his neck and back. Defendant told Plaintiff that if he mentioned the incident in the cell, he would kill him.

37. Days later, Plaintiff went to the medical unit at Tomoka CI, where medical staff diagnosed Plaintiff with a severe eye injury.

38. Various medical staff advised Plaintiff that he would need surgery.

39. Soon after the eye incident, Plaintiff wrote a motion for his Goldhagen lawsuit called "Motion to stop Sgt. Texiera from tearing up my legal papers as he did on 8-8-21 and he attacked me on 8-9-21."

40. When Ms. Adams, the "legal mail lady," came by to pick up this motion for mailing to the Court, Sgt. Teixeira appeared with her, to confiscate the motion.

41. In fear of his motion being stolen and further reprisals by Teixeira, Plaintiff mailed the motion to the Court separately.

42. The motion, dated August 12, 2021, appears as Document 114 in *Jones v. Schwarz*, 3:18-cv-155, docketed Aug. 19, 2021.

43. As a result of Defendant's poking him in the eye, Plaintiff continues to suffer near total vision loss in his left eye.

44. As a result of Defendant's actions, Plaintiff also suffers anxiety and mental anguish.

## Count I
### Violation of 42 U.S.C. § 1983: Excessive Use of Force

Plaintiff repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

45. Defendant, while acting under color of law, intentionally violated Plaintiff's Eighth Amendment right as a prisoner to be free from cruel and unusual punishment.

46. Defendant intentionally threw Plaintiff into a brick wall, injuring his neck and back, and poked Plaintiff hard in the left eye, causing Plaintiff excruciating pain as well as anxiety and mental anguish.

47. Defendant acted without any legitimate need to maintain or restore order or for any other good faith reason.

48. The force used by the Defendant was excessive and without penological purpose, and was applied maliciously and sadistically to cause harm.

49. As a direct and proximate result of the excessive use of force and violence on Plaintiff, Plaintiff has sustained mental and physical injuries and requires surgery.

7

50. Defendant's conduct caused Plaintiff's injuries, Plaintiff would not have been injured without Defendant's conduct, and the injuries were a reasonably foreseeable consequence of Defendant's conduct.

51. Plaintiff's damages include but are not limited to: the violation of Plaintiff's federal constitutional rights; physical injuries, including ill health, physical pain and suffering, disability, disfigurement, and discomfort, including such physical harm that Plaintiff is reasonably certain to experience in the future; mental and emotional distress, impairment of reputation, and personal humiliation, including such mental and emotional harm that Plaintiff is reasonably certain to experience in the future; the reasonable value of Plaintiff's property that was destroyed because of Defendant's conduct; and all other damages associated with this constitutional violation.

52. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Gerrard Jones demands judgment against Defendant Johnathan Teixeira for compensatory and punitive damages, costs of this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## Count II
## Violation of 42 U.S.C. § 1983: First Amendment Retaliation

Plaintiff repeats and re-alleges paragraphs 1 through 44 above, as if fully set forth herein and further alleges:

53. In violation of the First Amendment, Defendant, while acting under color of law, instructed an orderly, Flav, to bring Plaintiff's legal papers to him and then ripped up those legal papers in retaliation for Plaintiff's filing a lawsuit against his KKK "brother" Sgt. Goldhagen.

54. Defendant further retaliated by frightening Plaintiff by threateningly telling Plaintiff, who is Black, that the Defendant and Goldhagen were members of the KKK, an organization with a history of extreme violence towards Blacks.

55. Defendant told Plaintiff that Defendant would tear up anything Plaintiff mailed out that was related to his "brother" Goldhagen.

56. When Plaintiff repeatedly asked for his legal documents, requests protected under the First Amendment, Defendant came to Plaintiff's cell and threatened to mace, beat, and kill Plaintiff if he kept saying anything about him destroying Plaintiff's legal papers.

57. Defendant's actions were retaliatory and placed Plaintiff in fear.

58. In an attempt to have Plaintiff violently attacked and murdered, Defendant falsely yelled to Plaintiff's fellow inmates in his wing that Plaintiff was a child molester in prison for raping very small children.

9

59. Defendant's action was retaliatory and placed Plaintiff in further fear for his life.

60. Defendant also told Plaintiff that if he did not drop the lawsuit against Goldhagen he would have Plaintiff stabbed or killed by another inmate.

61. When Plaintiff continued to yell at Defendant to return his legal documents, Defendant—in furtherance of his retaliation—threatened to "get the captain" and have Plaintiff "gassed" if Plaintiff "did not shut up."

62. When Plaintiff submitted grievances in response to Defendant's threats, Defendant retaliated on August 9, 2021 by bringing a large inmate with a knife to Plaintiff's cell, with no other officers present, told him to stop filing and drop his lawsuit against Goldhagen, and threatened to have the inmate kill him.

63. Plaintiff further retaliated, and underscored his threat, by poking Plaintiff hard in the left eye, to the extent that Plaintiff has lost almost all vision in that eye as a result.

64. Moreover, Defendant sought to interfere with Plaintiff's First Amendment right to prepare legal documents and present his case to the Court by having Plaintiff's bedding removed because Defendant knew that Plaintiff had previously stored legal documents in his mattress.

65. Defendant further retaliated—and threatened additional retaliation—by removing Plaintiff from his cell, and with five other White guards, throwing Plaintiff into a brick wall and telling him not to report the incident in the cell.

66. Plaintiff's lawsuit against Defendant's KKK "brother," asking for his legal papers, and filing grievances against Defendant were motivating factors in Defendant's decision to retaliate against Plaintiff.

67. Defendant's retaliatory actions would likely deter a similarly situated reasonable person from engaging in Plaintiff's protected speech and conduct—pursuing his lawsuit, asking for his legal papers, and filing grievances against Defendant.

68. Defendant acted under color of law. His actions were outside the limits of lawful authority and abusive in manner, and he acted in a way that misused his power as a Corrections sergeant and was able to do so only because he was a Corrections sergeant.

69. Acting under color of authority, Defendant—while in uniform and on duty—instructed the orderly named Flav to bring Plaintiff's legal papers to him, destroyed the papers, repeatedly threatened Plaintiff with violence, falsely informed other inmates that Plaintiff was a child molester, instructed another inmate to come with him to Plaintiff's cell with a knife, threatened Plaintiff in the

cell, jabbed Plaintiff in the eye, ordered the other inmate to remove Plaintiff's bedding, and with other officers threw Plaintiff against a wall.

70. As a direct and proximate result of Defendant's violent threats and excessive use of force and violence against Plaintiff as a result of Plaintiff's protected speech, Plaintiff has sustained mental and physical injuries and compensatory damages.

71. Damages include but are not limited to: the violation of Plaintiff's federal constitutional rights; physical injuries, including ill health, physical pain and suffering, disability, disfigurement, and discomfort, including such physical harm that Plaintiff is reasonably certain to experience in the future; mental and emotional distress, impairment of reputation, and personal humiliation, including such mental and emotional harm that Plaintiff is reasonably certain to experience in the future; the reasonable value of Plaintiff's property that was destroyed because of Defendant's conduct; and all other damages associated with this constitutional violation.

72. Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff Gerrard Jones demands judgment against Defendant Johnathan Teixeira for compensatory and punitive damages, costs of

this action, reasonable attorneys' fees, and such further relief as the Court deems appropriate.

## Demand for Jury Trial

Pursuant to Rule 38, Plaintiff Gerrard Jones hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: September 2, 2024.

Respectfully submitted,

*/s/ Joshua Tarjan*
Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
(323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2024, I electronically filed the foregoing document with the Clerk by using the CM/ECF system, which will serve a copy on all counsel of record.

By: */s/ Joshua Tarjan*
Joshua Tarjan
