UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GERRARD JONES,

    Plaintiff,

v.

J. TEIXEIRA,

    Defendant.

Case No. 6:23-cv-1738-PGB-DCI

**PLAINTIFF'S OPPOSED MOTION TO COMPEL PRODUCTION OF RECORDS IN COMPLIANCE WITH SUBPOENA DUCES TECUM**

Pursuant to Rule 45(d)(2)(B)(i), Plaintiff moves to compel the Florida Department of Corrections ("FDOC") to produce records as commanded by a duly issued and served subpoena duces tecum. FDOC opposes the motion, while Defendant takes no position. In support of this motion, Plaintiff states:

**BACKGROUND**

1. This is a lawsuit stemming from events at Tomoka Correctional Institution ("C.I.") on August 8 and 9, 2021 while Plaintiff was housed in E Dormitory, a special confinement unit. Defendant was then a sergeant assigned to the dormitory. *See* generally Doc. 29 (Amended Complaint).

2. On September 24, 2024, Plaintiff, through undersigned counsel, served FDOC with a Fed.R.Civ.P. 45 subpoena. *See* Exhibit 1.

3. The Parties and FDOC negotiated a protective order, which this Honorable Court issued on November 18, 2024. (Doc. 40.)

4. During the past ten and a half months, FDOC has provided multiple batches of responsive documents, and FDOC's counsel has cordially worked with Plaintiff's counsel to obtain yet-to-be produced records.

5. Plaintiff and Defendant jointly moved to extend the discovery deadline so that these records might be provided (Doc. 41), and recently this Court issued an Order extending the deadline for Discovery to October 6, 2025 (Doc. 43).

6. Unfortunately, notwithstanding significant compliance by FDOC, some relevant records are yet to be produced:

### DC6-228 Sign-In Logs

7. In Subpoena Item 9, Plaintiff requested: "All DC6-228 Inspection of Special Housing Record forms for E Dorm August 6, 2021 through September 6, 2021."

8. And in Item 14, Plaintiff requested: "For August 6, 2021 through August 11, 2021: a. All rosters and logs listing inmates and staff present in E dorm during Defendant's assigned shifts."

9. Florida Administrative Code ("F.A.C.") Chapter 33-602.220(9)(c) (effective 6/1/21) mandates:

> Form DC6-228, Inspection of Special Housing Record, shall be maintained in each administrative confinement unit. *Each staff*

2

> *person shall sign such record when entering and leaving the confinement unit.* Prior to leaving the confinement unit, each staff member shall indicate any specific problems including any inmate who requires special attention.

(Emphasis added.)

10. In his deposition, Defendant testified that FDOC staff sign in at the dorm front desk when entering the unit. These sign-in logs—presumably DC6-228 forms—are relevant as Plaintiff seeks to identify staff who entered the unit and removed him from his cell to a location off-camera where he was threatened and injured.

11. The DC6-228 forms/logs would also help show when orderlies entered the unit. Orderlies themselves do not sign in, but FDOC staff supervising them sign in. Plaintiff claims that on August 8, 2021 he gave his legal documents to an orderly for copying, and that the orderly told him Sgt. Teixeira had the records ripped up. Also, an inmate—possibly an orderly—entered Plaintiff's cell on August 9, with the Defendant, who then jabbed Plaintiff in the eye.

12. The DC6-228 forms/logs could help establish when either of these two inmates (the legal clerk orderly and the inmate who entered the cell) were present in the dorm.

13. The DC6-228 forms have yet to be produced.

**DC6-229B Daily Record of Special Housing – Supplemental forms**

14. In Subpoena Item 10, Plaintiff requested: "All DC6-229 Daily Record

3

of Special Housing forms and DC6-229B Daily Record of Special Housing – Supplemental forms for Plaintiff, August 6, 2021 through September 6, 2021."

15. In Item 14, Plaintiff also requested: "All daily records of special housing for Plaintiff not otherwise described herein" for August 6 to 11, 2021.

16. FDOC has provided Daily Record of Special Housing forms but <u>only one</u> Daily Record of Special Housing – <u>Supplemental</u> form, for August 1, 2021, when Plaintiff initially entered E Dorm. The form has no information past August 1, 2021.[1]

17. However F.A.C. Ch. 33-602.220(9)(b) (effective 6/1/21) mandates:

> Form DC6-229B, Daily Record of Special Housing – Supplemental, shall be completed and attached to the current Form DC6-229, Daily Record of Special Housing, whenever additional written documentation is required concerning an event or incident related to the specific inmate.

18. Based on the experience of both Plaintiff and his counsel, the Supplemental form (DC6-229B), for example, might show whether an inmate was removed from his cell for an inmate sick call.

19. Indeed, Plaintiff had a sick call on August 19, 2021 directly related to this incident, but there is no DC6-229 or DC6-229B form showing such visit. The

---

[1] Although F.A.C. 33-602.220(9)(b), in place in August 2021, refers to the DC6-229<u>B</u> Daily Record of Special Housing – Supplemental form, the single Supplemental form provided by FDOC in Discovery here is apparently mislabeled as simply "DC6-229"—without the "B." Regardless, any request for DC6-229 forms would have encompassed a mislabeled Supplemental form.

4

Supplemental might also show activities with orderlies regarding Plaintiff's legal documents, which would help corroborate his claim that his documents were taken from him, and not returned—which led to the incident with the Defendant.

20. The Supplemental might also show that Plaintiff's mattress and pillow were removed on August 9, 2021, corroborating Plaintiff's claim that the Defendant entered his cell with another inmate on that date and had his mattress and pillow removed, before jabbing Plaintiff in the eye, the property removal being its own form of retaliation.

21. FDOC must produce all DC6-229 and DC6-229B Supplemental forms for the requested period (August 6, 2021 through September 6, 2021).[2]

## Investigator General Documents

22. In Subpoena Item 3, Plaintiff requested "All incident reports, MINS reports, and investigation reports, and appendices to such reports relating to the matter sued upon."[3]

23. To date, FDOC has provided in response a single, one-page MINS Incident Report, dated August 19, 2021, which indicates the August 9 incident was

---

[2] FDOC has provided DC6-229 Daily Record of Special Housing forms covering August 1, 2021 through September 4, 2021, but as discussed above, not the Supplemental forms other than for August 1.

[3] "MINS" stands for Management Information Notification System and is FDOC's internal system used to report incidents and events within FDOC.

5

referred to the Investigator General's Office. (The report states: "SEND TO IG OFFICE: Y.")

24. Plaintiff formally alerted FDOC about his attack via grievances he filed August 9 and 19, 2021. (FDOC provided these grievances in Discovery.)

25. Based on his experience, Plaintiff contends that upon learning of the attack against him, FDOC protocol required staff to contact the Inspector General ("IG"), who would then initiate an investigation, which would yield a report.

26. Plaintiff contends that between August 20 and 24, 2021 he spoke about the Incident with an assistant warden of security, a female, who made notes to herself during her conversation/interview with the Plaintiff.

27. A few days after that conversation he also spoke with the prison IG, a male, who swore-in Mr. Jones for a taped interview. Plaintiff believes the audio recording is at least 25 minutes long. (Such audio would also be discoverable under Subpoena Item 2, which requested "Any photos, videos and audio recordings relating to the matter sued upon.")

28. Based on his experience, Plaintiff contends that the IG would also have conducted a recorded interview with the Defendant.

29. No records or recordings from the IG's investigation have been turned over.

## Video

30. In Subpoena Item 1, Plaintiff requested "All audio and video recordings (highest quality available)—including from fixed-wing, handheld and body worn cameras—for E Dorm for August 7, 2021 through August 10, 2021."

31. In June 2025, FDOC responded:

> A MINS search was conducted to best capture any UOF that occurred during that time period at Tomoka CI, E dorm. One UOF (#21-12199) was identified, in which video was found to be responsive. This video is not in reference to Inmate Jones. The video recordings cannot be provided as they are confidential and exempt pursuant to:

32. However, FDOC never finished the last sentence or thought, and provided no exemption (which is terminology typically used in public records requests). Moreover, the Parties and FDOC are operating under the Confidentiality Agreement (Doc. 40), which would protect the confidentiality of any such video.

33. Plaintiff seeks to review the video to determine its relevance. Even if the incident related to the video (UOF #21-12199) is not directly material to Plaintiff's case, the video itself may show staff and inmates who were separately involved in the incidents involving Plaintiff. The video may thus yet yield discoverable, relevant and possibly important information.

## Use of Force Files

34. In Subpoena Item 16, Plaintiff requested "Personnel file of Defendant,

7

including discipline and *use of force files*, along with production quality photograph for identification by witnesses." (Emphasis added.)

35. In February 2025, Plaintiff's counsel erroneously informed FDOC counsel that the use of force ("UOF") reports were accounted for. However, in his deposition on July 8, 2021, Defendant testified that he had more than twenty UOFs at Tomoka C.I and when asked if he had more than fifty, did not know.

36. Plaintiff's counsel then circled back to FDOC counsel and re-requested the Defendant's use of force files. Such files should include incident reports for each UOF. These records are relevant and important as they could reveal a modus operandi of the Defendant, such as using eye gouging during use of force of encounters.

37. FDOC has not provided a complete set of UOF records.

**Medical Record from August 19, 2021**

38. In Item 12, Plaintiff requested "All of Plaintiff's medical records from January 1, 2016 through the present."

39. To its credit, FDOC has provided over 1,500 pages of medical records, with numerous full reports of medical encounters. However, a handwritten entry in a Chronological Record of Health Care form mentions that Plaintiff was seen by medical on August 19, 2021. But no full medical report <u>from that date</u> has been provided. That sick call visit on August 19 was the first medical encounter Plaintiff

had after being injured by the Defendant, and Plaintiff insists he sought treatment then for the injury he sustained due to Defendant's jabbing him in the eye.

40. The Chronological Record entry itself seems to undermine Plaintiff's claims regarding being injured. However, Plaintiff repeatedly submitted Grievances that he was injured by Sgt. Teixeira, his eye was swollen, and that he was effectively ignored on August 19 by the nurse, who made statements indicating he (the nurse) was an ally of the Defendant, and therefore antithetical to the Plaintiff.

41. Plaintiff seeks the medical report from that August 19, 2021 sick-call visit to discover who the nurse was and if any information in the medical report itself corroborates his being injured by being jabbed in the eye.

## MEMORANDUM OF LAW

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34. As such, a court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production." *Commissariat A L'Energie Atomique v. Samsung Elecs. Co., Ltd.*, No. 8:06MC44T30TBM, 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006).

Rule 26(b) provides in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The documents discussed *supra*, which FDOC has so far failed to provide, are relevant and important to Plaintiff's claims, for reasons explained above. FDOC has asserted no privilege for the records, and for the video merely suggests the video is "exempt"—possibly due to a public records exception under Florida's Public Records Act, Chapter 119, Fla. Stat.

Even were FDOC claiming a privilege with respect to the video, any such "privileged matter" would have to be based on federal rules of privilege, not state law exemptions to public records disclosures. *See, e.g.*, *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Ingram v. AAA Cooper Transp., Inc.*, No. 1:14-CV-142, 2016 WL 5402749, at *2 (S.D. Ga. Sept. 26, 2016) (Federal Rules of Civil Procedure have the force of federal statute, and by virtue of the Supremacy Clause prevail over a state procedural rule provided that the federal rule "transgresses neither the terms of the [federal Rule] Enabling Act nor constitutional restrictions.").

FDOC must turn over the video because the video may not only be directly relevant and lead to important discoverable information—but also because Florida's Public Records Rules are subordinate to Federal Rules of Civil Procedure. And any interest FDOC has in protecting the video from unwanted public disclosure is encompassed by the Confidentiality Agreement (Doc. 40).

WHEREFORE, Plaintiff moves for an Order compelling FDOC to provide the following records to Plaintiff's counsel within a time set by this Honorable Court, prior to the Discovery deadline (October 6, 2025):

a. All DC6-228 Inspection of Special Housing Record forms for Tomoka C.I. E Dorm August 6, 2021 through September 6, 2021.

b. All rosters and logs listing inmates and staff present in E dorm during Defendant's assigned shifts, for August 6, 2021 through August 11, 2021.

c. All Daily Record of Special Housing – Supplemental forms for Plaintiff, August 6, 2021 through September 6, 2021, with the exclusion of the August 1, 2021 form which has already been provided.

d. All Investigator General reports and documentation, including audio from any interviews conducted in this matter.

e. All audio and video recordings (highest quality available)—including from fixed-wing, handheld and body worn cameras—for Tomoka C.I.'s E Dorm for August 7, 2021 through August 10, 2021.

    f. Defendant's complete use of force files, including but not limited to incident reports included in those files.

    g. Plaintiff's medical records for date of service August 19, 2021.

Dated: October 24, 2024        Respectfully Submitted,

*/s/ Joshua Tarjan*
Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
(323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com
*Counsel for Plaintiff*

## Local Rule 3.01(g) Certification

I CERTIFY that (i) I conferred with Jessica Schwieterman, Esq., counsel for the Defendant, who emailed me on August 12, 2025 that she takes no position regarding the motion, and (ii) I spoke by telephone on August 12, 2025 with Aman Dhaliwal, Esq., counsel for FDOC, who stated he opposes the motion.

*/s/ Joshua Tarjan*

## Certificate of Service

I CERTIFY the foregoing was filed electronically on 8/12/25 and served to counsel of record registered to be notified by the CM/ECF electronic mail system

12

13

and emailed to counsel for FDOC at aman.dhaliwal@fdc.myflorida.com.

*/s/ Joshua Tarjan*